USA v. Sheikh, appeal number 25-1011. Mr. Shivari. Good morning, Your Honors, and may it please the Court. My name is Matthew Shivari, and I represent the appellant defendant. In this case, Mr. Farhan Sheikh would request to reserve two minutes of my time for rebuttal if I have it to reserve. Your Honors, what the government did here is akin to pulling a fire alarm, watching people vacate in a panic, and then using that panic as proof there was a fire. The clinic's workers' fear tells us only that the law enforcement's warning was effectively alarming, not that Mr. Sheikh's posts were true threats. This is simply bootstrapping. The government created fear, then used that fear as proof, and the subsequent improper admission of testimony from the clinic's workers, an improper admission of the 11 photographs depicting the security improvements, and the district court's subsequent denial of Mr. Sheikh's Rule 33 motion for a new trial was air. In understanding Mr. Sheikh's actual intent is critical here, and we know that by turning to this Court's 2008 decision. Mr. Shivari, why aren't all these arguments waived? I've never quite seen a brief like the one that was filed in this case. I understand, Judge. Four pages of argument. Couldn't be more bare-bones than that. Your Honor. Couldn't be. Three issues and four pages. I don't know how you could have been more bare-bones than that. Our cases overwhelmingly say if you fail to develop arguments, they're waived or forfeited. Why isn't everything here forfeited? Judge, I would argue, especially as to this issue regarding the denial of the Rule 33 motion, that the arguments were certainly developed. This was erased during a pretrial motion, continued and renewed during a trial. No, I'm talking about in our court. Understood, Judge. There's no record sites. There's very little citation to case law that makes any sense with respect to your arguments. There's just, there's nothing there for us to review. Judge, I would respectfully posit that our emphasis was on the developing the factual citations to the record that this Court would need to make a determination. The case law, as the government cites, I think, provide... You argue that the District Court erred by failing to deny the indictment because the grand jury was not properly informed of essential materials and you cite no authority or records whatsoever from the grand jury to support your arguments. None. Now, that argument is over because once the jury decides a case, it makes the grand jury process unreviewable. The argument doesn't make any sense to begin with, but you cite nothing in the grand jury that would support your argument. How can we possibly address the merits of that claim? Judge, I think the factual record allows review of the merits of that claim. As to the denial of the Rule 33 motion... Could I take you there with regard to the Rule 33 motion? Yes, Judge. Was there... So, your argument is that the reactions of the clinic employees was not relevant because they didn't see the Was there any... What sort of argument, if any, was made with regard to why, if the witnesses had seen the actual posts, that they would have had some sort of different reaction? Yes, Your Honor. I think that's why the context in which Mr. Sheik's posts were made is relevant and important in that... So, is the FBI or these agents supposed to not only show the witnesses the posts, but also tell them about the context of the posts? Judge, I would say that the context is important, as this Court made clear in U.S. v. Parr. No, no. I understand the context is important to figure out whether or not it was a true threat, and that's something that the jury should consider. But my question is, with regard to the Rule 33 motion, you are arguing that district court abuse discretion in allowing the employees of the clinic to testify, and you say that's because the testimony is irrelevant because they didn't review the posts. They were just... Their reaction was based upon law enforcement telling them that there was a threat. To the issue of relevance, I would agree. And so my question is, in the district court, was there any argument made as to why the posts themselves would elicit a different reaction than what they got? Because it seems to me that the posts themselves, in some ways, would be more alarming than what the witnesses were told at the clinic. I mean, he goes on to say it's not a joke. He identifies the Women's Aid Center by name and its location. He uses profanities throughout his posts. Was there any argument made about why showing them the posts would have elicited a less alarming reaction? Judge, I think the posts, and particularly the form in which they were made, would have registered a much less alarming reaction because those posts were made in a specific forum that was built and patronized based on responding to making statements through shock value in a platform that was known for dark humor and outrageous posts. It was never... No, I understand. So your theory then is that in order for the employee reactions to be relevant, the law enforcement officers would have had to provide them with all of this context. I think that could have potentially registered a much different level of alarm in seeing the form in which those threats were made. And that's why the facts here are distinguishable from USB Schneider, where the threats were sent directly to the Supreme Court. There's no issue there. The get reactions. Furthermore, there's no... Mr. Sheik took no steps toward any attack, no weapons, no planning, no reconnaissance. It was clear, even from the government's only witness from the I-20 universe, also said that that was the nature of those type of posts, is to get a I am not a satirical account. I post what I mean and I will carry out what I post. I would be alarmed if law enforcement agents who saw that post didn't take it seriously. How do you explain something like that in the context of this being all kind of not a real threat? Judge, those posts represent ongoing communication within the community of I-20. So Mr. Sheik is simply doubling down on that kind of stance to seek reaction. Again, in that forum, there was no intent of there being a true threat. It was a forum where those types of things were exchanged without it being a true threat. Mr. Sheik, in his particular position, capitalized on another user, Army of Christ, being arrested for similar posts. This was his unfortunate opportunity to capitalize on that trend to gain clout and popularity through that forum, which at that time, very sadly, he desperately sought. But again, that understanding of that context to the clinic workers, I think, would have registered a much different level of threat. Do you want to save some time for rebuttal? If I may, Judge, thank you. Ms. Wells, do you have anything to add here? Thank you, Your Honor, and may it please the Court. Briefly, I do want to address the Rule 33 motion and the testimony of the clinic workers, and I just think it's important to frame the nature of the testimony and what was going on at the trial, which is, as we've heard even this morning, the entire defense in this case was that the defendants' posts were a quote-unquote joke, that they were made in a forum where no one took anything seriously, where nothing could be taken seriously. In light of that, the government presented testimony from two employees at the clinic that was the target of the threats. That testimony, it's difficult to tell from a written record sort of the time that goes on here, but to put it in context, there's about 20 pages total of direct testimony from these two witnesses. The district court instructed the government, and the government did keep that testimony concise. She instructed us not to belabor the point or introduce cumulative evidence, and what we actually see is that their testimony established a handful of key things for the government, the location of the clinic, the fact that it was a real business at the location in the threats, that it performed abortion services, among other things. In other words, all to corroborate the reasoning that the jury should find this was a true threat. And so with all of that in mind, there was nothing about their testimony that was meant to garner sympathy, there was nothing emotional about it, as a matter of fact. The district court has broad discretion here, as this court knows, but I do want to flag one other thing that I think is material to all of this, which is that there was a jury instruction added to the pattern, and the jury here was instructed specifically that it is ultimately for you, the jury, and not any witness, including law enforcement, but to include the clinic workers, to determine whether a reasonable observer would interpret these as true threats. And then finally, I think the court made a good point earlier that what was presented by the agent to the clinic workers, in terms of describing the threat, was accurate but sanitized. It was far less alarming, far less emotional, far less frightening than the actual posts themselves. And so I think the point is well taken that had the jury actually seen the posts, or excuse me, had the employees actually seen the posts, their reaction may have been even more significant. Of course, at the end of all of this, the harmless error standard applies. The evidence in this case was overwhelming. The posts themselves, just on their face, are true threats. The surrounding commentary and reaction by the defendant and the other users of iPhoney corroborate that, and so if nothing else, the court can find that there was no error on that basis. Unless there are other questions, the government would ask that the district court be affirmed in all respects, and we'll rest on the papers. Okay, thank you, Ms. Wells. Thank you. Mr. Ciavarri, would you like to add anything else? Judge, as to the government's summary of the clinic workers' testimony, it was far from succinct, in matter of fact. This was two days worth of testimony, and their testimony really formed the heart of the government's case, and it was very, certainly highly emotional. Ms. Kam, for instance, testified that she was frightened, apprehensive, uneasy, scared. The other clinic worker also testified that she was shocked and scared, talked about there's testimony about taking time off work, considering whether they could still work at the clinic, etc. So this, in a profound way, would have biased the jury and garnered sympathy, as well as the photographs that showed their reactions, all of which took place only after law enforcement manufactured that fear by informing them of the threats. The sanitized version, again, does remove any mention of the form in which those posts were made which would have been relevant. There's no way to determine if the jury would have came to the same conclusion without that testimony, for which reason we would ask that this court vacate Mr. Sheik's conviction and remand for a new trial. All right, thank you, Mr. Ciavarri. The case will be taken under advisement. Our last case